**BROWN KWON & LAM, LLP**
William Brown, Esq. (WB 2108)
Clara Lam, Esq. (CL6399)
521 Fifth Avenue, 17ᵗʰ Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
wbrown@bkllawyers.com
clam@bkllawyers.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MINQIANG WU,** | |
| **Plaintiff,** | **Case No.:** |
| **- against -** | |
| **CHINA MERCHANTS BANK CO., LTD.** and **KANG PAN,** | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

Plaintiff MINQIANG WU ("Plaintiff"), upon personal knowledge as to himself, and upon information and belief as to other matters, by and through his undersigned attorneys, hereby files this Complaint against Defendants CHINA MERCHANTS BANK CO., LTD. ("CMB" or "Corporate Defendant") and KANG PAN ("Pan" or "Individual Defendant," and together with Corporate Defendant, "Defendants") and alleges as follows:

### INTRODUCTION

1.      Plaintiff alleges, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(g) ("Title VII"), the New York State Human Rights Law, New York State Executive Law, Article 15 §§ 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), that Defendants subjected

him to a hostile work environment and terminated his employment in retaliation for his reporting workplace sexual harassment and complaining about Defendants' retaliatory employment practices. Plaintiff seeks to recover (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## ADMINISTRATIVE PREREQUISITES

2.      Plaintiff has exhausted Title VII's administrative requirement of filing a charge with the Equal Employment Opportunity Commission ("EEOC"). On March 15, 2022, Plaintiff filed a Charge of Discrimination with the EEOC. On March 31, 2022, the EEOC issued Plaintiff's Notice of Right to Sue. Therefore, this lawsuit was filed within the ninety (90) day period of the receipt of Plaintiff's Notice of Right to Sue.

3.      Pursuant to NYCHRL, Plaintiff will serve a copy of the Complaint upon the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel within ten (10) days of the filing.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

5.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 as they arise out of the same events and circumstances that give rise to Plaintiff's federal claims.

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because the events giving rise to the claims occurred in this District.

## PARTIES

### *Plaintiff*

### *MINQIANG WU*

7.      Plaintiff MINQIANG WU resides in Queens County, New York.

8.      Plaintiff MINQIANG WU was a covered employee within the meaning of Title VII, NYSHRL and NYCHRL.

### *Defendants*

### *CHINA MERCHANTS BANK CO., LTD.*

9.      Defendant CHINA MERCHANTS BANK CO., LTD. ("CMB") is a Chinese bank headquartered in the Futian District, Shenzhen, Guangdong, China, operating under the tradename "China Merchants Bank." According to their website, since the end of 2018, CMB has more than 1,800 branches worldwide, including six overseas branches. In or around November 2007, CMB was given federal approval to open a branch in New York City. CMB's New York City branch ("CMBNY") is located at 535 Madison Avenue, 18th Floor, New York, NY 10022.

10.     At all relevant times, Defendant employed Plaintiff.

11.     At all relevant times, Defendant was and continues to be an employer within the meaning of Title VII, NYSHRL, and the NYCHRL.

12.     At all relevant times, Defendant operated China Merchants Bank through Defendant CHINA MERCHANTS BANK CO., LTD.

13.     At all relevant times, Defendant CHINA MERCHANTS BANK CO., LTD. maintained control, oversight, and direction over Plaintiff, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

*KANG PAN*

14.     Individual Defendant Kang Pan was, during the relevant period, the General Manager at CMB's New York branch and Plaintiff's direct supervisor.

15.     At all relevant times, Individual Defendant Kang Pan was an "employer" or an "aider and abettor" within the meaning of the applicable laws.

16.     At all relevant times, Individual Defendant Kang Pan was directly involved in managing the operations of CMB.

17.     At all relevant times, Individual Defendant Kang Pan had the power to hire, fire, promote or discipline Plaintiff, and had control over the terms and conditions of Plaintiff's employment at CMB, including his assignments, work schedule, pay and responsibilities.

18.     At all relevant times, Individual Defendant Kang Pan had the power to prevent or stop any unlawful practices that harmed Plaintiff at CMB.

## STATEMENT OF FACTS

19.     Plaintiff was initially hired by CMB around May 2000, and continued to be employed until the termination of his employment on June 3, 2021.

20.     During his more than two decade tenure, Plaintiff worked diligently and successfully for CMB, and climbed the ranks through various promotions.

21.     For the first fourteen years of his employment with CMB, from May 2000 until around March 2014, Plaintiff worked in CMB's head office in Shenzhen, China.

22.     On April 28, 2014, CMB relocated Plaintiff to work in the United States as a "Representative" for its U.S. Representative Office in New York City, at "CMBNY."

23.      On January 1, 2016, CMB promoted Plaintiff to the position of "Department Head of Strategy and Business Development" at CMBNY. As part of this promotion, Plaintiff's base

salary, not including his annual bonus, was increased from $120,000.00 to $200,000.00 per year. In 2017, CMB again increased Plaintiff's base salary to $230,000.00.

24.     From around February 2017 until September 25, 2017, Plaintiff held the position of "Department Head of CMBNY Human Resources and General Office," while simultaneously continuing to serve as the Head of CMBNY's Strategy and Business Development Department.

25.     Throughout Plaintiff's tenure with CMB, Plaintiff demonstrated himself to be an exemplary employee who was essential to CMB's operations in New York and the United States. Despite his many years of loyal and dedicated service, Plaintiff was terminated in direct retaliation for his participation in statutorily protected activities.

26.     In or around June 2019, a female human resources associate, Ms. Wenqi Liu, informed Plaintiff that she was sexually harassed by CMBNY's then General Manager, Mr. Chengyue Jiao, who was also Plaintiff's direct supervisor. Specifically, Ms. Liu informed Plaintiff that Mr. Jiao had inappropriately touched her during a work dinner in New York City and then pressured her to accompany him to a hotel room to engage in sexual intercourse.  Ms. Liu declined Mr. Jiao's proposition, however, later that night Mr. Jiao sent Ms. Liu multiple messages demanding that she go to a hotel room, and threatened that if she did not comply she would not be promoted and her career would be dead.  Despite the threats, Ms. Liu continued to refuse Mr. Jiao's demands.

27.     Ms. Liu further told Plaintiff that she had reported the above events to the head of CMBNY's Human Resources Department, Sabrina Wolf, however, Ms. Wolf failed to take sufficient action to protect Ms. Liu.

28.     Ms. Liu then turned to Plaintiff for assistance. On June 5, 2019, Plaintiff informed CMB's General Manager of Human Resources Department, Mr. Cheng Zhang, of Ms. Liu's

allegations, and subsequent efforts by Mr. Jiao and CMB's in-house legal advisor, Duan Lian to perform a cover-up.   Specifically, Plaintiff had discovered that Mr. Jiao and Duan Lian were planning to falsely assert that it was Ms. Liu who was attempting to seduce Mr. Jiao, and were going to use this story as part of an effort to intimidate Ms. Liu, and pressure her to drop her allegations by threatening to irreparably damage her reputation.    Despite the seriousness of the allegations against Mr. Jiao, and subsequent efforts to perform a cover-up, CMB declined to terminate Mr. Jiao's employment, and instead, CMB transferred him from CMBNY, to CMB Wing Lung Bank in China.

29.    On September 3, 2019, Mr. Kang Pan replaced Mr. Jiao as the new General Manager of CMBNY and became Plaintiff's new direct supervisor. However, Mr. Pan was and is a close personal friend of Mr. Jiao. CMB was aware of Mr. Pan's and Mr. Jiao's friendship, yet took no action to protect Plaintiff from unlawful retaliation by Mr. Pan.

30.    On September 25, 2019, a mere three weeks after Mr. Pan took his new position, Mr. Pan suddenly and unexpectedly announced the dissolution of Plaintiff's department, CMBNY's Strategy & Business Development Department. Mr. Pan then proceeded to proclaim, in front of the entire department, that his decision to dissolve the Strategy and Business Development Department was because "we don't like people who complain," referring to Plaintiff's escalation of Ms. Liu's allegations against Mr. Jiao.   The functions of the Strategy and Business Development Department were subsequently transferred to various other departments including the Financial Department.  The effect of this action was that Plaintiff lost his leadership position as well as much of his authority and responsibilities.

31.    On September 30, 2019, a few days after Mr. Pan's dissolution of Plaintiff's department, Mr. Pan attended a business dinner with the remaining team members of the now-

dissolved Strategy and Business Development Department. At the dinner, Mr. Pan openly talked about Ms. Liu's complaints of sexual harassment against Mr. Chengyue Jiao, despite Ms. Liu's clear instructions to CMB's management that the allegations remain confidential.

32.    On November 14, 2019, Mr. Pan called Plaintiff and told him that he was "nothing but a reporter," a "lowlife who is not qualified to eat with him" and to stay away from him. Immediately following the call, Plaintiff called the Deputy General Manager of CMBNY, Ms. Mu "Mona" Zhang to report Mr. Pan's retaliatory comments.

33.    The following day, on November 15, 2019, Mr. Pan emailed all CMBNY employees to announce that due to the departmental reorganization Plaintiff was no longer a department head.

34.    On December 2, 2019, Mr. Pan called Plaintiff into his office and shouted at Plaintiff that he dislikes people like him who report their superiors, and told Plaintiff that he should start look for a new job. Mr. Pan further threatened Plaintiff by reminding him that as an at-will employee, Mr. Pan could terminate his employment at any time. When Plaintiff responded that Mr. Pan was engaging in unlawful retaliation, Mr. Pan told Plaintiff to get out of his office.

35.    Later that week, on December 6, 2019, around 11:00 a.m., Mr. Pan called Plaintiff into his office to inform him that he was being demoted by three title grades, from department head down to a senior manager. This demotion would reduce Plaintiff's annual salary by $30,000 per year and would result in him losing his private office. In response, Plaintiff informed Mr. Pan of his intentions to pursue legal action as a result of Mr. Pan's acts of retaliation. At all relevant times throughout this period, Plaintiff's work performance was not questioned and was objectively outstanding.

36.     Immediately following the meeting with Mr. Pan, Plaintiff complained to the Deputy General Manager of CMBNY, Ms. Mu "Mona" Zhang, of Mr. Pan's retaliatory actions. After following up on Plaintiff's complaint of retaliation, Ms. Zhang informed Plaintiff that Mr. Pan was willing to reconsider his decision regarding the demotion and pay cut. On December 12, 2019, CMBNY changed Plaintiff's position to "Deputy Head of the Risk Department," which was still a demotion from his department head position. Mr. Pan suffered no reprimand or consequences for his retaliatory actions against Plaintiff, nor did CMB take any measures to prevent further retaliation.

37.     In his new position as Deputy Head of the Risk Department, Plaintiff was isolated from the rest of his department and the core functions of the risk department, and was relegated to performing junior level research work without any team support.  In response, Plaintiff made multiple requests throughout 2020 for staff support.  However, such requests fell on deaf ears as Mr. Pan sought to isolate Plaintiff as part of his efforts to pressure Plaintiff to resign. Furthermore, throughout 2020, Mr. Pan repeatedly threatened to terminate Plaintiff's employment.

38.     In or around November 2020, there was a lawsuit filed against CMB by one of Plaintiff's colleagues.  Suddenly, Defendant made a superficial showing of addressing Plaintiff's concerns regarding a lack of support by assigning him an assistant.

39.     Towards the end of December 2020, Mr. Pan told Plaintiff that he would be receiving a B-2 rating on his annual performance review. At all relevant times, Plaintiff's bonus was guaranteed so long he achieved a B-1 review or better. For CMB employees, a B-2 rating was reserved only for severely underperforming employees who were at risk of termination. CMB employees who received a B-2 rating were generally not eligible for an annual bonus.

40.     On December 22, 2020, after he was informed of his B-2 rating, Plaintiff called and spoke to the Branch Deputy General Manager, Xuejun Mao. Plaintiff communicated his concerns that the performance evaluation would result in a reduced bonus for the year, to which Mr. Mao confirmed that a decrease in his bonus was possible as a result of a B-2 rating. Though he was understandably upset, Plaintiff at all times acted with the utmost level of professionalism, and the conversation with Mr. Mao was entirely cordial.

41.     Not long thereafter, on January 19, 2021, Plaintiff's B-2 rating was overturned by CMBNY's Human Resource Department. Upon a careful review of Plaintiff's performance, CMBNY's Human Resources Department determined that the B-2 rating was not justified.

42.     On December 23, 2020, during the course of a compliance audit for the Risk Department, Plaintiff reviewed documents submitted to the New York State Department of Financial Service and the U.S. Consulate in Guangzhou, China. Upon review of the documents, Plaintiff discovered that Mr. Pan had failed to disclose his prior activities with the Chinese State Security Bureau and his status as a Senior Chinese Communist Party Member on the mandatory reporting forms. Plaintiff noted that Mr. Pan's failure to disclose such activities on the mandatory reporting forms posed a significant compliance risk for CMBNY as it constituted a violation of applicable New York State regulations, as well as federal immigration law, and therefore should be investigated and addressed immediately. That same day, Plaintiff emailed the Branch Deputy General Manager, Xuejun Mao, Mu Zhang and Miao Li, to inform them of the issue.

43.     Following his report, on or about January 15, 2021, during the 2020 CMBNY Executive Member Performance Briefing, Mr. Pan threatened Plaintiff in front of his colleagues, and again raised Plaintiff's prior report of Ms. Liu's complaint of sexual harassment while accusing him of being disloyal and a snitch.

44.     On January 22, 2021, Plaintiff made a formal complaint to CMB's General Manager of the Human Resources Department, Mr. Cheng Zhang, regarding the multiple ongoing acts of retaliation against him as a result of reporting Ms. Liu's complaint of sexual harassment to headquarters. As part of his written complaint, Plaintiff stated:

> I am deputy general manager of Risk department in NY branch. In accordance with the performance appraisal and communication policies, I am appealing my complaints to the head office about the branch using the performance appraisal to retaliate against me because I reported the complaint of sexual harassment. The details are as follows:
>
> June 5, 2019, I informed General Manager of the Human Resource Department in Head Office Mr. Cheng Zhang about sexual harassment case made by Chengyue Jiao, the former general manager of CMBNY. My purpose was to safeguard the branch's reputation. But because of it, NY Branch executive officers started to verbally humiliate and attack me constantly since Sept. 3, 2019. Then, Dec. 6, 2019, I was in the name of institutional restructuring (actually the number of departments in the branch kept no change and mid-level managers even added more), degraded 3 levels in a row and had a pay cut. After my strong protest and the intention to take legal action, Branch executive officers degraded my position from strategic business development department director to Risk department deputy manager. They erased my 20 years of career accumulation in CMB Bank, and cut off my further career development opportunities.

45.     Following Plaintiff's January 22, 2021 complaint, Mr. Pan initiated and coordinated an investigation into Plaintiff's allegations.  Plaintiff objected to Mr. Pan's involvement with the investigation, and expressed significant concern about its impartiality to Mr. Zhang, however, Plaintiff's objections were ignored.  On June 3, 2021, Plaintiff received an email from Ms. Yaoyao Guo, CMBNY's Department Head of Human Resources, notifying him that his allegations of retaliation by Mr. Pan were unsubstantiated.

46.     Moments later, on June 3, 2021, Ms. Guo and Mr. Joseph Loffredo, CMBNY's Deputy General Manager, called Plaintiff to inform him that his employment was being terminated

effective immediately. Ms. Guo and Mr. Loffredo went on to state that the basis for his termination was that the whistleblower report regarding Mr. Pan's failure to disclose his involvement with the Chinese State Security Bureau and his senior membership in the Chinese Communist Party on his visa application and work permit was brought in bad faith.

47.     Ms. Guo further sent a follow-up email later that morning, which stated that:

> [o]n December 18, 2020, you made a series of compensation-related demands to Andrew Mao. After Mr. Mao advised you on December 22, 2020 that your demands were rejected by [CMBNY], you responded by threatening to take action against Mr. Pan and [CMBNY] if your demands were not met. When your threat did not cause [CMB] to give you the pay and bonus guarantees you demanded, you proceeded to carry out your threat by filing what you characterized as 'whistleblower complaint' against Mr. Pan.

48.     The stated reasons for Plaintiff's termination were clearly pretextual. Plaintiff's reporting of his concerns regarding Mr. Pan's visa and work permit were made in good faith and were not related to his discussion with Mr. Mao regarding his performance evaluation.  These allegations are wholly inconsistent with Plaintiff's reputation which was built over his more than two decades long tenure with CMB.  Plaintiff never made any threats to Mr. Mao, and the conversation with him was professional. Rather, Plaintiff was terminated as a direct result of his initial reporting of sexual harassment and repeated complaints of subsequent retaliation.

49.     As a result of Defendants' retaliatory actions and termination of Plaintiff after over twenty (20) years of employment, Plaintiff has suffered from severe stress and anxiety, as well as other stress-induced medical issues including, but not limited to, high blood pressure and severe insomnia, for which he is required to take medication.

## STATEMENT OF CLAIMS

### FIRST CAUSE OF ACTION
**Retaliation in Violation of Title VII**
***Against CMB Defendant***

50.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

51.     Plaintiff is an employee and protected person within the meaning of Title VII and Defendant CMB is a covered employer under Title VII.

52.     Defendant CMB retaliated against Plaintiff on the basis of his protected activity under Title VII by making Plaintiff's work more difficult, reprimanding Plaintiff for reporting the sexual harassment complaint against his former direct supervisor, dissolving Plaintiff's department, demoting Plaintiff, terminating Plaintiff, among other acts of retaliation, after he reported a sexual harassment complaint from a female colleague against his former direct supervisor to Defendant CMB's headquarters.

53.     As a direct and proximate result of Defendant CMB's unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, economic harm for which he is entitled to an award of monetary damages and other relief.

54.     As a direct and proximate result of Defendant CMB's unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

55.     Defendant CMB's conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under Title VII, for which he is entitled to an award of punitive damages.

56.     Due to Defendant CMB's violations of Title VII, namely, retaliation against Plaintiff for participating in protected activity, Plaintiff is entitled to recover from Defendant: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees.

**SECOND CAUSE OF ACTION**
**Retaliation in Violation of the New York State Human Rights Law**
***Against All Defendants***

57.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

58.     Plaintiff is an employee and a protected person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

59.     Defendants retaliated against Plaintiff on the basis of his protected activity under the NYSHRL by making Plaintiff's work more difficult, reprimanding Plaintiff for reporting the sexual harassment complaint against his former direct supervisor, dissolving Plaintiff's department, demoting Plaintiff, terminating Plaintiff, among other acts of retaliation, after he reported a sexual harassment complaint from a female colleague against his former direct supervisor to CMB's headquarters.

60.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic harm for which he is entitled to an award of monetary damages and other relief.

61.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

62.     Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYSHRL, for which he is entitled to an award of punitive damages.

63.     Due to Defendants' violations of the NYSHRL, namely, retaliation against Plaintiff for participating in protected activity, Plaintiff is entitled to recover from Defendant: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees.

### THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFF
**Retaliation in Violation of the New York City Human Rights Law**
***Against all Defendants***

64.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

65.     Plaintiff is an employee and a protected person within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

66.     Defendants retaliated against Plaintiff on the basis of his protected activity under the NYCHRL by making Plaintiff's work more difficult, reprimanding Plaintiff for reporting the sexual harassment complaint against his former direct supervisor, dissolving Plaintiff's department, demoting Plaintiff, terminating Plaintiff, among other acts of retaliation, after he reported a sexual harassment complaint from a female colleague against his former direct supervisor to CMB's headquarters.

67.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic harm for which he is entitled to an award of monetary damages and other relief.

68.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish

and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

69.     Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYCHRL, for which he is entitled to an award of punitive damages.

70.     Due to Defendants' violations of the NYCHRL, namely, retaliation against Plaintiff for participating in protected activity, Plaintiff is entitled to recover from Defendants: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a.   An award to Plaintiff awarding relief for Defendants' discriminatory conduct, including, but not limited to economic, compensatory and punitive damages;

b.   Pre-judgment and post-judgment interest;

c.   Reasonable attorneys' fees and costs of this action;

d.   A declaratory judgment that the practices complained of herein are unlawful under Title VII, NYSHRL and NYCHRL;

e.   An injunction against CMB and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein; and

**f.**   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated:  New York, New York
       June 27, 2022

Respectfully submitted,

**BROWN KWON & LAM, LLP**

By:    */s/ William Brown*

William Brown, Esq.
Clara Lam, Esq.
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
wbrown@bkllawyers.com
clam@bkllawyers.com
*Attorneys for Plaintiff*

**PECHMAN LAW GROUP PLLC**
Louis Pechman, Esq.
Vivianna Morales, Esq.
488 Madison Avenue, Suite 1704
New York, NY 10022
Tel.: (212) 583-9500
pechman@pechmanlaw.com
morales@pechmanlaw.com
*Co-Counsel for Plaintiff*